KAISER AGRICULTURAL CHEMICALS, A DIVISION OF KAISER ALUMINUM & CHEMICAL CORPORATION, Plaintiff–Appellee,

v.

OTTUMWA PRODUCTION CREDIT ASSOCIATION, Defendant–Appellant.

No. 87–1002.

Court of Appeals of Iowa.

June 29, 1988.

Randall Stravers, Marion H. Pothoven and Mindy J. Morse of Clements, Pothoven, Pabst & Stravers, Oskaloosa, for defendant-appellant.

David L. Charles and W. Scott Simmer of Gamble, Riepe, Webster, Davis & Green, Des Moines, for plaintiff-appellee.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HAYDEN, Justice.

Defendant, Ottumwa Production Credit Association (PCA), appeals the judgment against it in favor of plaintiff, Kaiser Agricultural Chemicals (Kaiser). PCA asserts the trial court erred in its evidentiary rulings regarding the use and admissibility of one of Kaiser's exhibits. PCA also asserts the jury verdict granting recovery to Kaiser on all of its alternative theories was not supported by substantial evidence. PCA's final contention is the trial court erred by not giving a jury instruction on the statute of frauds in relation to Kaiser's breach of contract claim. We affirm.

For fifteen years prior to 1984, the farming partnership of the Knapp family had borrowed money annually from PCA and purchased on credit its seed, chemicals, and fertilizer from Kaiser. Kaiser was generally paid at the end of the year, either by the Knapps or directly by PCA. In 1984 the financial condition of the Knapps was unstable. Kaiser therefore checked with PCA before extending them credit. At trial, Kaiser alleged PCA reported the Knapps to be an acceptable credit risk and promised to pay the Knapps' debts to Kaiser, if necessary. Kaiser asserted it relied on these assurances and promises when it extended credit to the Knapps in 1984. PCA denied it gave the assurances and promises.

At the end of 1984, the Knapps were unable to pay their debt to Kaiser and PCA refused to pay Kaiser. Kaiser then filed suit against both PCA and the Knapps. The Knapps later filed for bankruptcy before the matter reached trial. Kaiser proceeded to trial against PCA. The trial court submitted Kaiser's claim against PCA to the jury on three theories: breach of an express or implied contract, fraudulent misrepresentation, and negligent misrepresentation. The jury returned a verdict awarding Kaiser $209,604.42. In its special verdicts, the jury found Kaiser had proven all three of its theories. This appeal followed.

I.

At trial Kaiser introduced its exhibit number 17, a two-page document with dated entries from April 11, 1984 through December 14, 1984 regarding action on the Knapps' account. The document was prepared by Kaiser employee Karl Combs from documents in the Knapps' credit file. PCA contends the trial court erred by failing to exclude the exhibit under the best evidence rule. PCA asserts the document constituted an improper summary. PCA also contends the trial court erred by allowing Combs to refresh his recollection with the document.

Iowa Rule of Evidence 1002 states: "To prove the content of a writing . . ., an original is required, except as otherwise provided in these rules or by statute." However, originals are not required where the "originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." Iowa R.Evid. 1004(1). Nor are originals required where they consist of "voluminous writings . . . which cannot

conveniently be examined in court." Iowa R.Evid. 1006. The contents of the originals may be presented in the form of a summary, but the "originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place." *Id.*

PCA's challenge to exhibit 17 is essentially to those entries for which the originals were not introduced into evidence nor inspected by PCA. Kaiser contended those records had been lost during their transfer from the subsidiary which formerly handled the Knapps' file to different offices after the sale of the subsidiary.

In order to hold the exhibit inadmissible because of that loss, we would have to find (1) the originals were intentionally lost, and (2) the loss was under circumstances indicating intentional fraud. *See Shinrone, Inc. v. Tasco, Inc.,* 283 N.W.2d 280, 287 (Iowa 1979). There is no evidence in the record supporting a finding of either. The document was prepared in December 1984. The subsidiary was sold in February 1985, and thereafter the records were transferred. This lawsuit was not filed until April 1985. We conclude the trial court did not err by admitting exhibit 17. Nor did the court err by allowing Karl Combs, prior to admission of the document, to refresh his recollection with it.

## II.

PCA also challenges the sufficiency of the evidence to support the jury's special verdicts on all of Kaiser's alternative theories. We note the jury's findings are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1); *Nadler v. City of Mason City,* 387 N.W.2d 587, 591 (Iowa 1986).

Regarding Kaiser's negligent misrepresentation claim, a negligent misrepresentation occurs when:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Beeck v. Kapalis,* 302 N.W.2d 90, 97 (Iowa 1981) (quoting Restatement (Second) of Torts § 552). Reliance upon the information is justifiable if a person acting with reasonable and ordinary prudence and caution would have a right to rely on the representations. *Sedco Inter. S.A. v. Cory,* 522 F.Supp. 254, 325 (S.D.Iowa 1981).

In this case, a representative of PCA assured Kaiser the loan to the Knapps, out of which Kaiser would be paid, would be made. Kaiser was also assured its credit limits on the Knapps would be covered. In the context of the parties' long business relationship, it was justifiable for Kaiser to rely on this information as indicating it could safely sell the Knapps their needed farm supplies in anticipation of being paid at the end of the year. PCA did not inform Kaiser it had decided, for that year, to make the loan to the Knapps contingent upon satisfaction of a projected cash flow. We conclude there was substantial evidence to support the jury's special verdict regarding negligent misrepresentation. As such, we need not address whether the evidence was sufficient to show fraudulent misrepresentation or a breach of an express or implied contract. Nor need we decide whether the trial court erred by failing to give a jury instruction on the statute of frauds.

AFFIRMED.